UNIVERSAL UNDERWRITERS GROUP, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–07–00297–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 29, 2009.

Melissa Ann Nance Murrah, Reynolds B. Brissenden, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

The owner of a vehicle appeals the trial court's order transferring title to the vehicle to the Harris County District Attorney's Office. The trial court took this action based on a novel legal theory advanced by the State under article 47.01a of the Texas Code of Criminal Procedure. We conclude that this legal theory lacks merit under the plain language of the statute. We reverse and render judgment that the owner is awarded possession of the vehicle without conditions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 14, 2004, Charles Wallace Lovings, a nineteen-year-old male, entered Helfman Dodge ("Helfman"), a car dealership, posing as Phyllis Brocato, a forty-six year old female. Lovings was dressed in drag when he approached a Helfman salesman. He presented a driver's license containing Brocato's personal information. Apparently, Lovings had removed Brocato's photograph and substituted his own image. Helfman's salesman obtained two credit reports on Brocato. Each report prominently stated "Initial Fraud Victim," indicating that Brocato previously had been the victim of fraud. Further, one report indicated that Brocato desired to be contacted before credit was extended in her name. Nonetheless, Helfman began making arrangements to sell the vehicle. JP Morgan Chase, a third-party lender, agreed to finance the transaction provided that Helfman verified the "ID Bureau Fraud Alert" and obtained a copy of a government-issued identification card. The salesman copied the buyer's identification cards, but no one from Helfman ever contacted Brocato. Ultimately, JP Morgan Chase extended credit, and Helfman sold a 2006 Chrysler 300, VIN 2C3KA43R96H376552 ("the vehicle") to Lovings.

The Houston police arrested Lovings four days later when he attempted to use the same false identification to obtain credit at a different automobile dealership. On January 31, 2007, Lovings pleaded "guilty" to making false statements to obtain credit, and the trial court assessed punishment at four years' confinement.

Following Lovings's arrest, the vehicle was towed to a private storage lot. Subsequently, members of Lovings's family submitted an affidavit of ownership and took possession of the vehicle. Approximately one month later, the vehicle was impounded by the Houston Police Department.

After discovering Lovings's fraud, Helfman paid the lender the total amount due under the finance agreement and secured

legal title to the vehicle. After the Harris County District Attorney's Office refused requests by Helfman for the return of its vehicle, Helfman filed a claim for indemnification with its insurance carrier, appellant Universal Underwriters Group ("Universal"). Universal paid Helfman's claim and thus obtained legal title to the vehicle.

The State later filed a "Petition for Disposition of Stolen Property," in which the State sought a hearing under article 47.01a of the Texas Code of Criminal Procedure so that the trial court could determine which person has the superior right to possession of the vehicle, which the petition indicated might be the Harris County District Attorney's Office.[1] Universal claimed it had the superior right to possession because it had paid Helfman's insurance claim for loss of the vehicle and because it had title to the vehicle. The State agreed that Universal held title to the vehicle, but the State argued that title is not dispositive of ownership. Relying on the definition of "owner" in the Texas Penal Code, the State asserted what it described as a "very novel" legal theory. Under this theory, if Helfman's alleged gross negligence made it easier for Lovings to unlawfully appropriate the vehicle, then Helfman forfeits its superior right to possess the property vis-à-vis the district attorney's office that prosecuted Lovings.[2] Following a hearing, the trial court accepted this legal theory, found that the Harris County District Attorney's Office has the superior right to possession of the vehicle, and ordered that title to the vehicle be transferred to the Harris County District Attorney's Office. In this appeal, Universal challenges the trial court's order.

## II. ISSUE AND ANALYSIS

■ In its second issue, Universal asserts that the trial court erred as a matter of law in finding that the Harris County District Attorney's Office has the superior right to possession of the vehicle and in ordering that title to the vehicle be transferred to the Harris County District Attorney's Office.[3] Under article 47.01a, the State may petition the district court to hold a hearing to determine who has the superior right to possession of the vehicle. See TEX.CODE CRIM. PROC. ANN. art. 47.01a (Vernon 2006). The State did so in this case. At the hearing, the State relied on the definition of "owner" in the Texas Penal Code. See TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon Supp.2008). Based on this definition, the State argued that the Harris County District Attorney has the superior right to possession of the vehicle under the following legal theory:

If (1) a property owner engages in grossly negligent, noncriminal conduct that makes it easier for someone to unlawfully appropriate the owner's property, (2) the Houston Police Department seizes that property as part of its investigation of the unlawful appropriation of the property, and (3) the Harris County

1. This was not a forfeiture proceeding under article 59.02 of the Texas Code of Criminal Procedure. See TEX.CODE CRIM. PROC. ANN. art. 59.02 (Vernon 2006).

2. Because Universal stands in the shoes of Helfman as its assignee and subrogee, this theory, if correct, would also result in forfeiture of Universal's superior right to possess the property.

3. In its first issue, Universal asserts that the trial court proceedings were "unnecessary and improperly instigated by the State." In its third issue, Universal argues that the trial court's order granting unconditional ownership to the State violates the United States and Texas Constitutions.

District Attorney prosecutes the person who unlawfully appropriated the owner's property, then the Harris County District Attorney has the superior right to possess the property under article 47.01a of the Texas Code of Criminal Procedure, and the property owner has forfeited its title to the property to the Harris County District Attorney's Office.

The trial court accepted this legal theory, acknowledging that it was "a very novel concept."

■ Though Universal presented undisputed evidence that it holds title to the vehicle, the State asserts that title is not dispositive and instead points to the definition of "owner" in the Texas Penal Code. *See* Tex. Penal Code Ann. § 1.07(a)(35). In this context, the State's reliance on the Penal Code is misplaced. Under the unambiguous language of the Penal Code, this definition of "owner" applies to the Penal Code, not to the Code of Criminal Procedure. *See id.* § 1.07(a). Therefore, the State's Penal Code argument lacks merit. Moreover, under article 47.01a, the trial court determines "superior right to possession," rather than ownership.

The State also cites the definition of "owner" in Chapter 502 of the Texas Transportation Code. *See* Tex. Transp. Code. Ann. § 502.001(16) (Vernon 2007). Again, under article 47.01a, the trial court determines "superior right to possession," rather than ownership. In addition, this definition of "owner" applies to Chapter 502 of the Texas Transportation Code, which requires the owner of a motor vehicle to apply for registration of the vehicle if it is used or to be used on a public highway. *See id.* § 502.002. Because this case does not involve any issue regarding the registration of vehicles, this definition does not apply.

The State concedes that a property owner still would have the "superior right to possession" of its property vis-à-vis a district attorney's office, even if the owner's negligence facilitated the unlawful appropriation of the property. However, the State asserts that, if a property owner engages in grossly negligent conduct that makes it easier for someone to unlawfully appropriate the property, then the district attorney's office has the "superior right to possession" of the property under article 47.01a if (a) the police department seizes that property as part of its investigation of the unlawful appropriation of the property, and (b) the district attorney prosecutes the person who unlawfully appropriated the owner's property. The State cites no statute, case, or other legal authority that articulates such a rule.[4] No court has ever recognized or even alluded to such a rule.

Because the Code of Criminal Procedure does not define "superior right to possession," these words must be given their common meaning. *See* Tex.Code Crim.

4. The cases cited by the State do not articulate this rule. *See National Safe Deposit Sav. & Trust Co. v. Hibbs*, 229 U.S. 391, 396, 33 S.Ct. 818, 57 L.Ed. 1241 (1913) (holding that bank was equitably estopped from recovering against stock broker for conversion of stock certificates that were assigned in blank and that broker had sold for a bank employee who misappropriated the stock certificates from the bank); *Glasscock v. First Nat'l Bank of San Angelo*, 114 Tex. 207, 266 S.W. 393, 395 (1924) (holding that drawer of check is liable only for the amount originally stated by drawer on check, even though the drawer's negligence facilitated the wrongful alteration of the amount on the check and the payment of a larger amount to the payee); *Foust v. Old Am. County Mut. Fire Ins. Co.*, 977 S.W.2d 783, 788 (Tex.App.-Fort Worth 1998, no pet.) (stating that a buyer who tenders part payment and takes possession of a vehicle becomes the owner of that vehicle within the meaning of an insurance policy covering the vehicle); *Lockwood Nat'l Bank v. T.W. Jennings*, 381 S.W.2d 682, 683 (Tex.Civ.App.-Houston 1964, writ ref'd n.r.e.) (same holding

PROC. ANN. art. 3.01 (Vernon 2005). Under this standard, Universal, the title holder, has the "superior right to possession" over one who holds no title to the vehicle. Looking to the plain meaning of the operative statutory language, even if a property owner engages in grossly negligent, non-criminal conduct that makes it easier for a person to unlawfully appropriate the owner's property, the owner does not thereby lose its superior right to possession of the property upon recovery of it following the crime. Though Helfman's conduct may have been objectionable, inappropriate, negligent, or even grossly negligent, under the plain and common meaning of article 47.01a, the State does not have the superior right to possession of the vehicle.

█ The State's legal theory lacks merit. A property owner's gross negligence that facilitates the criminal misappropriation of the property does not result in forfeiture of the owner's superior right to possess the property vis-à-vis the police department that investigated the crime or the district attorney's office that prosecuted the crime. The trial court erred as a matter of law by accepting this theory. Universal is entitled to possession of its property. For these reasons, we sustain Universal's second issue, reverse the trial court's order, and render judgment that Universal is awarded possession of the vehicle, without conditions.[5]

SEYMORE, J., concurring without opinion.

---

as *Glasscock* ); *Credit Ins. Corp. v. Pacific Fin. Corp.*, 329 S.W.2d 945, 946 (Tex.Civ.App.-Waco 1959, writ ref'd) (holding that one finance company did not perfect its lien in the mobile home in question and that second finance company, which financed purchase of the home by a bona fide purchaser for value, did perfect its lien).

5. Because Universal seeks the same relief under all three issues, this court need not and does not address Universal's first or third issues.